**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ALEX CALDERON-VELASQUEZ, | |
| Plaintiff, | |
| v. | No. 1:22-cv-692 (AJT/IDD) |
| D. MEARS, TATE, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT DAMIEN MEARS' MOTION TO DISMISS**

Defendant Damien Mears, through his undersigned counsel, respectfully submits this memorandum of law in support of his motion to dismiss Plaintiff's claims against him pursuant to Federal Rules of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiff Alex E. Calderon-Velasquez brings this *Bivens* action against two Bureau of Prison ("BOP") employees at Federal Correctional Institution ("FCI") Petersburg after he was placed in alternative clothing for three days due to the discovery of contraband in his room and assessed for suicidal risk after he wrote a letter suggesting he was struggling with suicidal thoughts. Based on these events, Plaintiff claims his right to privacy under the Fourth Amendment and right to be free from cruel and unusual punishment under the Eighth Amendment were violated.

As of this date, Plaintiff has served only one of the Defendants—Officer Damien Mears—with a copy of the Summons and Complaint. But Plaintiff's claims against Officer Mears cannot survive a motion to dismiss. As multiple courts have recognized in the wake of the Supreme Court's watershed decision in *Abbasi v. Ziglar*, 582 U.S. 120 (2017), there is no *Bivens* remedy available either for a federal inmate's Fourth Amendment right to privacy or Eighth Amendment right to be free from cruel and unusual punishment—especially under these circumstances. Given the new context Plaintiff's claims present, and the many special factors counseling hesitation, this Court should deny Plaintiff's request to expand the existing scope of the "disfavored" implied remedy of *Bivens*.

In addition to there being no available *Bivens* remedy, Officer Mears is entitled to qualified immunity on Plaintiff's claims. Put simply, it would not be clear to a reasonable federal officer confronted with the particularized circumstances pled in Plaintiff's complaint that he would be violating Plaintiff's Fourth or Eighth Amendment rights. For all these reasons, detailed below, all

of Plaintiff's claims against Officer Mears should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Allegations Relating to Officer Mears.[1]

At approximately 6:00 p.m. on January 6, 2022, BOP Officer Damien Mears searched Plaintiff's cell, located in the Special Housing Unit ("SHU") at FCI Petersburg. Am. Compl. at 5, Dkt. 7. During the search, Officer Mears left Plaintiff and his cellmate handcuffed and locked in the shower room for approximately 45 minutes. *Id.* at 5–6. Plaintiff alleges that he experienced "extreme pain" as a result, exacerbated by a previously sustained shoulder injury and broken toe.[2] *Id.* Plaintiff claims that Officer Mears "should have been" aware of his medical needs— particularly because he had a "bottom bunk pass" due to his injuries—but does not provide any facts suggesting Officer Mears knew of Plaintiff's pre-existing injuries. *Id.* at 5.

In Plaintiff's cell, Officer Mears and another officer discovered a clothing line—used by inmates for privacy—and a fishing line—used by inmates to pass items along cells. *Id.* at 6. In addition, the officers found "a broken piece of [a] tray cover wrapped inside of an empty fish

---

[1] Consistent with the standard governing the adjudication of motions to dismiss brought pursuant to Federal Rule 12(b)(6), this factual background assumes the truth of the non-conclusory factual averments contained within Plaintiff's complaint. *See, e.g., Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011). As such, the listing of a particular allegation here should not indicate that Defendant Mears concur with that allegation. Defendant Mears here summarize the facts relevant only to Plaintiff's claims against him (leaving out those facts relevant only to Plaintiff's claims against the other defendant, Dr. Tate, who has yet to be served in this action).

[2] According to the medical records Plaintiff attached to his Amended Complaint, he had a "healing fracture" on his left big toe that required alternative institutional shoes beginning in October 2021. Dkt. 7-12; *see Goines v. Valley Comm. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (holding that court may consider documents attached to complaint as exhibits in ruling on a motion to dismiss). According to documents Plaintiff has filed in a different case before this Court, his shoulder injury occurred in May 2021, allegedly due to an assault by another officer. *See Calderon v. Prince*, Case No. 1:21-cv-735 (AJT/JFA), Dkt. 3; *see also Anderson v. Bolster*, 2020 WL 5097516, at *3 (E.D. Va. Aug. 27, 2020) ("With that said, in consideration of a motion to dismiss, a court may take judicial notice of matters of public record such as court filings or records, without so converting the motion").

packet." Dk.t 7-4 at 1.  After finding these items, Officer Mears returned to Plaintiff and removed his handcuffs, but did not allow him or his cellmate to return to his cell.  Am. Compl. at 6.  Officer Mears left both inmates alone in the shower room again, this time for around two hours.  *Id.*  At approximately 8:45 p.m., Officer Mears returned and told Plaintiff that SHU Lieutenant De Los Santos approved his request to place Plaintiff in "alternate clothing"—i.e., "paper clothes."[3]  *Id.*

Officer Mears, and another male officer, strip-searched Plaintiff in the shower room, after escorting his cellmate to a different location.[4]  Dkt. 7-3 at 3.  Plaintiff alleges that Officer Mears was looking for a food tray lid hidden somewhere on his person.  *Id.*  Plaintiff claims that the reason Officer Mears supplied for the search is false because the tray lid, sized 8 by 10 inches, could not fit inside his body.  *Id.*; *see also* Am. Compl. at 7.  But the Incident Report Plaintiff attaches to his Amended Complaint notes that the Officers discovered a *broken piece* of the tray lid in his cell.  Dkt. 7-4 at 1.  Logically, Officer Mears was searching for any pieces of the hard plastic tray lid—an obvious potential weapon—hidden by Plaintiff or his cellmate on their persons.

Following the strip search, Plaintiff alleges that Officer Mears took his regular prison clothing, and required him to don the alternative clothes.  Am. Compl. at 7.  Plaintiff alleges that Officer Mears was not authorized to place him in alternative clothes in these circumstances—i.e., that it violated BOP policy and federal law.[5]  *Id.*  According to Plaintiff, the alternative clothes

---

[3] In the body of his Amended Complaint, Plaintiff alleges that Officer Mears lied about obtaining approval from Lt. De Los Santos to put Plaintiff in alternative clothes.  Compl. at 6–7.  But in his letter to the Psychology Department, attached as Ex. A to the Amended Complaint, Plaintiff confirms that a Lieutenant Cross was present and approved Officer Mears' request.  *See* Dkt. 7-3, at 3; *see also* Mem. Opp. & Order at 2 n.3, Dkt. 33.

[4] As the documents attached to Plaintiff's Complaint make clear, Plaintiff's cellmate was subject to the same treatment as him throughout (i.e., Plaintiff's cellmate was *also* escorted to the shower room, handcuffed, strip-searched, and then put in alternative clothing), although the two were strip-searched in different locations.  *See* Dkt. 7-3, at 1–3.

[5] Alternative clothing, also known as paper clothing, is authorized under BOP Program Statement 5270.11 "when an inmate alters, destroys, or uses a clothing/linen issued article in a manner that

were entirely see-through and he was not given underwear.  *Id.*  Officer Mears allegedly escorted Plaintiff back to his cell in the alternative clothes in front of other inmates, officers, and staff.  *Id.*  Plaintiff alleges that he remained in the alternative clothing for three days, during which time he was escorted to several places in front of other inmates and staff, including one female officer.  *Id.* at 7–8.  On January 8, 2021, after Plaintiff told another senior staff member about the situation, Plaintiff was given underwear and allowed to change back into regular clothing.  *Id.* at 8.

### B.  Procedural Background.

Plaintiff filed his initial *pro se* Complaint in this Court on June 17, 2022.  Dkt. 1.  Two months later, Plaintiff moved the Court for leave to proceed *in forma pauperis.*  Dkt. 5.  On September 30, 2022, the Court dismissed Plaintiff's Complaint after an initial screening revealed no actional claim for relief, but nonetheless granted him leave to file an amended complaint.  Dkt. 6.  Plaintiff filed his Amended Complaint on October 31, 2022.  Dkt. 7.  On May 16, 2023, the Court granted Plaintiff's motion to proceed *in forma pauperis* and ordered Defendants to respond to the Amended Complaint within sixty days of service.  Dkt. 15.

On July 31, 2023, undersigned counsel—representing Defendants in their official capacities only—moved to dismiss Plaintiff's official capacity claims against Defendants, arguing that neither Defendant was served individually, and that Plaintiff could not bring *Bivens* claims against federal employees in their official capacities.  *See* Dkts. 23–24.  Plaintiff opposed and

---

poses a threat to safety, security, or good order of the SHU or to herself/himself, other inmates, or staff." *See* BOP, Special Housing Units (Nov. 23, 2016), *available at* https://www.bop.gov/policy /progstat/5270.11.pdf.  "The use of alternative clothing is appropriate when an inmate is in an agitated state, because it prevents the inmate from having access to material that can be used to harm himself or others.  Alternative clothing is made of a paper-like material and is not used to punish or humiliate inmates.  It is used for inmate and staff safety and is purchased from approved vendors." *Alshurafa v. Wimbish*, 2021 WL 5138181, at *4 (S.D.W. Va. July 1, 2021), *report and recommendation adopted by* 2021 WL 5137914 (S.D. W.Va. Nov. 3, 2021).

sought additional time to serve the individual defendants.  *See* Dkts. 27–28.

On March 6, 2024, the Court granted Defendants' motion to dismiss Plaintiff's official capacity claims.  *See* Dkt. 33.  The Court granted a 120-day extension for Plaintiff to effectuate service on the individual defendants (i.e., until July 4, 2024), and warned Plaintiff that if a defendant was not served within that timeframe, then "the defendant will be dismissed from the instant action without prejudice." *Id.* at 8.

On April 26, 2024, Officer Damien Mears was served with a copy of Plaintiff's summons and Complaint.  Dkt. 35.  A summons for Defendant Tate was returned unexecuted on April 29, 2024.  Dkt. 36.  To date, Defendant Tate has not yet been served.

Plaintiff's Amended Complaint raises the following *Bivens* claims against Officer Mears: (1) that Officer Mears violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by (a) keeping Plaintiff in handcuffs and making him wait in the shower room for two hours; and (b) conducting a strip search on Plaintiff and forcing him to wear alternative clothes without underwear for three days in view of other inmates and staff; and that (2) Officer Mears violated Plaintiff's Fourth Amendment right to privacy by exposing Plaintiff's naked body (via the strip search and use of alternative clothes).  Am. Compl. at  9–12.

## LEGAL STANDARDS

A complaint should be dismissed for failure to state a claim upon which relief may be granted if the plaintiff fails to meet his obligation to provide the grounds for entitlement to relief. *Twombly*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).  "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to

survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; rather, the plaintiff must allege facts that are sufficient "to state a claim to relief that is *plausible on its face*." *Twombly*, 550 U.S. at 555, 570 (emphasis added).

While it is true that the Court must "liberally construe a *pro se* litigant's complaint," *Laber v. U.S. Dep't of Defense*, 2021 WL 5893293, at *2 (E.D. Va. Dec. 13, 2021) (quoting *Laber v. Harvey*, 438 F.3d 404, 413, n.3 (4th Cir. 2006)), the liberal pleading standard does not "excuse a clear failure in the pleadings to allege a federally cognizable claim." *Id.* (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990)).

## ARGUMENT

### I. Plaintiff's Bivens Claims Are Not Cognizable.

Plaintiff's claims against Officer Mears should be dismissed at the outset because, given recent Supreme Court and Fourth Circuit authority, this Court cannot extend *Bivens* to the new circumstances presented here. The history of *Bivens* is undoubtedly familiar to this Court, but bears repeating to explain why no such implied cause of action exists here. In 1971, *Bivens* "broke new ground" by recognizing, without any statutory authorization from Congress, an implied cause of action for damages against federal agents who allegedly violated the Fourth Amendment by conducting a warrantless search and seizure of an individual "in his own home." *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020); *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). "In the decade that followed," the Supreme Court recognized two other limited circumstances in which there were such implied causes of action. *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). Those other circumstances are:

> In *Davis v. Passman*, 442 U.S. 228 (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The [Supreme] Court held

that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. And in *Carlson v. Green*, 446 U.S. 14 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The [Supreme] Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment.

*Abbasi,* 582 U.S. at 131 (citations omitted). In the last 50 years, thus, "[t]hese three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Id.*; *see also Hernandez*, 589 U.S. at 101–02.

Consequently, "expanding the *Bivens* remedy is . . . a 'disfavored' judicial activity." *Abbasi,* 582 U.S. at 135 (quoting *Iqbal*, 556 U.S. at 675)). So much so that the Supreme Court has observed that, if the trio of *Bivens* cases had been decided today, "it is doubtful" that the same result would have been reached. *Hernandez*, 589 U.S. at 101–02. The Fourth Circuit has heeded the Supreme Court's warning on multiple, recent occasions—especially in the context of federal inmates seeking relief against prison officials. *See, e.g.*, *Mays v. Smith*, 70 F.4th 198, 203–07 (4th Cir. 2023) (rejecting *Bivens* remedy for federal inmate bringing Fifth Amendment claims for procedural due process and race discrimination); *Bulger v. Hurwitz*, 62 F.4th 127, 137–42 (4th Cir. 2023) (holding it would improperly extend *Bivens* to allow federal inmate's estate to bring Eighth Amendment claim for BOP's alleged failure to protect him from another inmate's fatal attack); *Tate v. Harmon*, 54 F.4th 839, 841–42 (4th Cir. 2022) (rejecting request to extend *Bivens* to claims of "degenerate" conditions of confinement in violation of the Eighth Amendment); *Earle v. Shreves*, 990 F.3d 774, 778–81 (4th Cir. 2021) (declining to extend *Bivens* to allow federal inmate to bring a claim of retaliatory detention under the First Amendment).

Because a *Bivens* remedy is almost always "disfavored," the creation of a new *Bivens* claim outside the very specific circumstances under which the Supreme Court (and *only* the Supreme

Court) has previously recognized requires satisfaction of a strict two-step test. *See Abbasi,* 582

U.S. at 135. Under this two-step test,[6] the Court must first consider whether a case will extend a

*Bivens* remedy into a "new context." *Id.* at 1857 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S.

61, 74 (2001)). "If the case is different in a meaningful way from previous *Bivens* cases decided

by th[e] [Supreme] Court, then the context is new." *Id.* at 139.

To present a new context, 'a radical difference is not required.'" *Annappareddy v.*

*Pascale*, 996 F.3d 120, 133 (4th Cir. 2021) (quoting *Tun-Cos v. Perrotte*, 922 F.3d 514, 522 (4th

Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020)). To illustrate, the Supreme Court "has provided

several examples of 'meaningful differences,' some of which are quite minor . . . ." *Tun-Cos*, 922

F.3d at 523. They include:

> the rank of the officers involved; the constitutional right at issue; the generality or
> specificity of the official action; the extent of judicial guidance as to how an officer
> should respond to the problem or emergency to be confronted; the statutory or other
> legal mandate under which the officer was operating; the risk of disruptive intrusion
> by the Judiciary into the functioning of other branches; or the presence of potential
> special factors that previous *Bivens* cases did not consider.

*Id.* (quoting *Abbasi*, 582 U.S. at 140). If the case does not present a new context, then the *Bivens*

remedy is available, and there is no need to proceed to the second step. *Annappareddy*, 996 F.3d

at 133 (citing *Tun-Cos*, 922 F.3d at 522–23); *see also Abbasi*, 582 U.S. at 135.

If a case does present a new context, then the second step requires the Court to evaluate

whether there are "special factors counselling hesitation" to extend *Bivens* "in the absence of

affirmative action by Congress." *Annappareddy*, 996 F.3d at 133 (citing *Tun-Cos*, 922 F.3d at

523); *see also Abbasi*, 582 U.S. at 136. While the Supreme Court has "not attempted to 'create an

---

[6] However, the Supreme Court has newly signaled that while its "cases describe two steps, those
steps often resolve to a single question: whether there is any reason to think that Congress might
be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492 (2022).

exhaustive list' of factors that may provide a reason not to extend *Bivens*," it has nonetheless stressed that "'central to [this] analysis' are 'separation-of-powers principles.'" *Hernandez*, 589 U.S. at 102 (quoting *Abbasi*, 582 U.S. at 135). Among other things, therefore, a court must "consider the risk of interfering with the authority of the other branches" and "ask whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy,' and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (internal citation omitted) (quoting *Abbasi*, 582 U.S. at 136). The Court has repeatedly stressed in this regard "that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure,'" and that the uncertainty of the "'systemwide' consequences" of recognizing a cause of actions under *Bivens* is another special factor precluding the expansion of the *Bivens* remedy. *Egbert*, 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137).

As discussed below, Plaintiff's constitutional claims against Officer Mears do not pass the two-step test for implying a new *Bivens* remedy. Plaintiff's Fourth Amendment and Eighth Amendment claims represent an extension of existing Supreme Court *Bivens* caselaw. In addition, there are special factors weighing against extending any *Bivens* remedy to these circumstances.

### 1. Plaintiff's Claims Present a New Context Distinct from Prior *Bivens* Caselaw.

Plaintiff's Fourth and Eighth Amendment claims against Officer Mears unquestionably present new contexts from those found in *Bivens*, *Carlson*, or *Davis*.

*First*, Plaintiff brings Fourth Amendment claims against Officer Mears based on his perceived right to bodily privacy in prison. Although *Bivens* itself also involved Fourth

Amendment claims, that is the only similarity between the two sets of circumstances.[7] As the Supreme Court has recognized, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. at 103. In *Bivens*, the plaintiff alleged that federal narcotics agents violated his Fourth Amendment rights when they conducted a warrantless search of his apartment, handcuffed him in front of his family, and arrested him on suspicion of drug charges. *Bivens*, 403 U.S. at 389. Here, Plaintiff alleges that while he was incarcerated at a federal prison, a federal prison official forced him to undergo a strip search and wear see-through clothing for three days after discovering contraband in his prison cell. Not only does this case present a new class of defendants than *Bivens*—federal prison officials as opposed to federal narcotics officers— it also involves a routine search for contraband items and efforts to enforce prison safety rules that protect officers and inmates, as opposed to an unannounced and unlawful search of a private residence to uncover evidence of a crime.[8]

Recognizing this important contextual difference, other courts in the Fourth Circuit have held that similar constitutional claims based on strip searches and/or the use of alternative clothing

---

[7] Plaintiff's Fourth Amendment claims are not similar to either *Davis* or *Carlson*—which recognized claims in the context of the Fifth Amendment (gender discrimination) and Eighth Amendment (deliberate indifference to medical needs).

[8] Highlighting the constitutional difference between Plaintiff here and the Plaintiff in *Bivens* itself, while inmates in federal prisons "retain an interest in *some* degree of bodily privacy and integrity," *King v. Rubenstein*, 825 F.3d 206, 215 (4th Cir. 2016) (emphasis added), courts in the Fourth Circuit have made it clear that inmates' Fourth Amendment rights are more limited than those granted to non-inmates. *See*, *e.g.*, *Payne v. Taslimi*, 998 F.3d 648, 658–60 (4th Cir. 2021) (noting that an inmates' expectations of privacy "are quite limited"); *Matheny v. Sellars*, 2023 WL 4162283, at *4 (W.D. Va. June 23, 2023) (listing cases); *Jones v. Antonelli*, 2020 WL 6292486, at *3 (D.S.C. Jan. 15, 2020) (noting that detention facilities "require[e] an inmate's privacy interests be balanced against the "security interests of the institution." (quoting *Bell v. Wolfish*, 441 U.S. 520, 559–60 (1979)); *Balance v. Young*, 130 F. Supp. 2d 762, 769 (W.D. Va. 2020) (noting that "a prisoner has no cognizable expectation of privacy in his cell").

in federal prisons present a new *Bivens* context.  *See Matheny*, 2023 WL 4162283, at *1, *4 (holding that plaintiff's Fourth Amendment claims presented a new context where prisoner alleged that prison official placed him "in alternative clothing that exposed his genitals"); *Curry v. Olberding*, 2022 WL 791925, at *6 (D.S.C. Feb. 3, 2022) (finding same where prisoner alleged he was forced to undergo multiple strip searches in view of other inmates); *Harrell v. Earley*, 2021 WL 3698893, at *13 (W.D. Va. Aug. 20, 2021) (recommending to district judge that inmate's Eighth Amendment conditions of confinement claim based on, *inter alia*, being placed in "alternative clothing" presented a new *Bivens* context); *Jones*, 2020 WL 6292486, at *3 (finding new context presented where federal inmate brought Fourth Amendment claims based on a strip search he alleged was for the officer's sexual gratification).  Courts have come to the same conclusion in other circuits as well.  *See, e.g.*, *Smith v. Kane*, 2018 WL 11016957, at *3 (D. Az. June 25, 2019) (finding new *Bivens* context where prisoner alleged he was subjected to visual strip searches); *Williams v. Verna*, 018 WL 5777365, at *6 (E.D. Cal. Oct. 31, 2018) (same where plaintiff alleges he was subjected to multiple strip searches and forced to walk across unit only in his underwear).  From these similar cases, it is clear that Plaintiff's Fourth Amendment claims present a new context for a *Bivens* remedy.

*Second*, Plaintiff Eighth Amendment claims against Officer Mears also present a new context that would constitute an expansion of existing Supreme Court *Bivens* caselaw.  Although the Supreme Court, in *Carlson*, created a *Bivens* claim under the Eighth Amendment against federal prison officials, that was in the specific context of prison official's deliberate indifference to an inmate's medical needs.[9]  *See Carlson*, 446 U.S. at 16.  In contrast, here, Plaintiff asserts that

---

[9] Plaintiff's Eighth Amendment claims obviously bear no resemblance to either *Davis* or *Bivens*— which recognized claims in the context of the Fourth Amendment (unreasonable seizure) and Fifth Amendment (gender discrimination).

his Eighth Amendment right to be free from cruel and usual punishment was violated based on his interactions with prison guards and staff. The underlying conduct is also different. In *Carlson*, the plaintiff died after prison officials failed to treat his asthma condition properly, including allegedly inducing drugs that made his asthma attack more severe and delaying his transfer to a hospital. *Id.* at 16 n.1. Here, Plaintiff alleges a variety of conduct from Officer Mears, including being painfully restrained for several hours, strip-searched, and put in see-through clothing. Unlike the plaintiff in *Carlson*, here Plaintiff does not allege that he sought medical attention or was denied medical treatment anywhere in his Amended Complaint. As the Fourth Circuit recently emphasized in the prison setting, "a new context may arise if *even one* distinguishing fact has the potential to implicate separation of powers considerations." *Tate*, 54 F.4th at 846 (emphasis in original).

And as such, courts within the Fourth Circuit have similarly found cases involving federal prisoners asserting Eighth Amendment claims based on purportedly harsh or abusive behavior from prison officials—including painful restraints and/or sexual harassment—as presenting new contexts for a *Bivens* remedy. *See Ball v. Streeval*, 665 F. Supp. 3d 436, 442 (W.D. Va. Feb. 9, 2023) (finding new *Bivens* context presented where inmate alleged "that various defendants subjected him to cruel and unusual punishment in the form of beatings, threats, sexual assault, and painful restraints," including wearing alternative clothing); *Hood v. Bureau of Prisons*, 2023 WL 361872, at *10–11 (W.D. Va. Jan. 20, 2023) (finding new context presented where federal inmate plaintiff alleged Eighth Amendment violations based on "cruel and unusual punishment in the form of beatings, torture, threats, and painful restraints, and that other defendants failed to intervene."); *Jean v. Smallwood*, 2022 WL 17969091, at *2, *5 (W.D. Va. Dec. 27, 2022) (noting in case where Plaintiff alleged, *inter alia*, being improperly restrained and beaten, that "the

Supreme Court has never ruled that a damages remedy exists for claims of excessive force by BOP officers against an inmate"); *Longworth v. Mansukhani*, 2021 WL 4472902, at *4 (E.D.N.C. Sept. 29, 2021) (finding inmate's claims that he was sexually abused and harassed by prison employee, and that the prison failed to protect him from that abuse, presented a new *Bivens* context).

As in those cases, here Plaintiff's claims of being improperly restrained, strip-searched, and subject to sexual harassment bear little resemblance to the plaintiff's fatal struggle to obtain proper medical treatment in *Carlson*. Accordingly, Plaintiff's Eighth Amendment claims against Officer Mears, like his Fourth Amendment claims, present a new context for a *Bivens* remedy.

### 2. Special Factors Counsel Against Implying New *Bivens* Claims Here.

Given that Plaintiff's constitutional claims against Officer Mears present "new contexts" for a *Bivens* remedy, the Court must move to the second step and consider whether there are special factors counselling hesitation to permit Plaintiff to proceed on those claims. *See Abbasi*, 582 U.S. at 136; *Annappareddy*, 996 F.3d at 133. Multiple special factors are present here.

To start, the Supreme Court has repeatedly held that "an alternative remedial structure" precludes a *Bivens* claim. *Egbert*, 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137). Relevant here, the BOP has created the Administrative Remedy Program which "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a); *see also Malesko*, 534 U.S. at 74 (describing the BOP's Administrative Remedy Program). Indeed, "many courts have explicitly recognized that the BOP's [A]dministrative [R]emedy [P]rogram is an alternative process that precludes a *Bivens* remedy."[10] *Masias v. Hodges*, 2021 WL 1558329, at *5 (N.D. W. Va. Apr. 8, 2021) (citation omitted); *see also Earle*,

___

[10] While not raised in this motion, as this Court must accept Plaintiff's well-pleaded allegations as true, Plaintiff has not fully exhausted his administrative remedies in the BOP's program, and thus has yet to take full advantage of this alternative remedy.

990 F.3d at 780 ("Like all federal inmates, [plaintiff] has 'full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program.'" (quotation omitted); *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020); *Mays*, 2020 WL 5821841, at *12 (E.D.N.C. Sept. 30, 2020) (similar); *Silva v. United States*, 45 F.4th 1134, 1142 (10th Cir. 2022) (same).

Independent of existing alternative remedies, other "special factors" exist in this context that implicate the very separation-of-powers concerns that animated the *Abbasi* holding and should preclude the creation of a new *Bivens* remedy. As the Supreme Court has recognized, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safely*, 482 U.S. 78, 84–85 (1987). Because of this difficulty, "courts have long been committed to avoiding judicial intervention in the running of prisons or in matters of security within prisons." *Jean*, 2022 WL 17969091, at *6; *see also Matheny*, 2023 WL 4162283, at *5 ("Courts have recognized that 'the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily does not interfere.'" (quoting *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980)). Here, Plaintiff asks the Court to insert itself—in the guise of a disfavored individual capacity implied right of action—in routine prison discipline and safety issues such as how to secure and outfit inmates during cell and visual searches. Not only does such a request open a can of worms to a potential flood of new litigants, but it also puts the Court squarely in the position of overseeing how federal prisons are run and maintained.

Finally, "'legislative action suggesting that Congress does not want a damages remedy' also counsels hesitation in recognizing a cause of action under Bivens.'" *Matheny*, 2023 WL

4162283, at *5 (quoting *Abbasi*, 582 U.S. at 148). Here, "Congress specifically created an alternative process for prisoners to address grievances when it passed the [PLRA] . . . to limit prisoner litigation." *Scates v. Craddock*, 2019 WL 6462846, at *7 (N.D.W. Va. July 26, 2019) (citations omitted), *adopted*, 2019 WL 4200862 (N.D.W. Va. Sept. 5, 2019). As the Supreme Court held in *Abbasi*, the PLRA makes "clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." 582 U.S. at 148.

These special factors—each alone and combined—counsel against creating a *Bivens* remedy in the new contexts raised Plaintiff. As such, Plaintiff's claims against Officer Mears merit dismissal with prejudice.

## II. In the Alternative, Officer Mears Is Entitled to Qualified Immunity.

If this Court nonetheless elects to create a new *Bivens* remedy against Officer Mears, he would still be entitled to qualified immunity, and thus Plaintiff's claims against Officer Mears should be dismissed on this alternative basis.

The Supreme Court has repeatedly held that officials enjoy qualified immunity from suit unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). The doctrine of qualified immunity recognizes that subjecting public officials to personal liability for their discretionary actions distracts those officials from their public duties, inhibits their actions, and may deter qualified people from accepting public service. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity is both a defense to liability and an "entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and gives government officials breathing

room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is generally governed by a two-pronged analytical framework. First, one asks whether the facts, viewed in the light most favorable to the plaintiff, establish a violation of a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, it must be determined whether the constitutional right was clearly established at the time the alleged conduct occurred, such that a reasonable official would understand that what he was doing violated that right. *Pike v. Osbourne*, 301 F.3d 182, 184-85 (4th Cir. 2002). A court need not address those prongs in any particular order, and the resolution of either prong in a defendant's favor compels a finding of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A.     **Officer Mears' Strip Search for Contraband.**

First, Plaintiff claims that Officer Mears' decision to subject him to a private strip search after finding contraband in his cell violated the Fourth Amendment. As will be seen below, not only does Plaintiff's Amended Complaint fail to provide non-conclusory factual allegations that would state a plausible Fourth Amendment violation, but those allegations would certainly not state a plausible *clearly established* constitutional violation.

i.     ***Plaintiff Has Not Pled a Plausible Constitutional Violation.***

There can be little doubt that the Fourth Amendment has a different application with respect to incarcerated individuals; indeed, "the Supreme Court [has] held that an inmate has no reasonable expectation of privacy, and thus no Fourth Amendment protection, in his prison cell, given 'the paramount interest in institutional security.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Hudson v. Palmer*, 468 U.S. 517, 525 (1984)). Nevertheless, the Supreme

Court has held that prisoners retain a *certain* degree of Fourth Amendment protection in their *person*—e.g., a strip search in prison is permissible so long as it reasonably balances "the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *see also United States v. Edwards*, 666 F.3d 877, 883 (4th Cir. 2011); *Farrell v. Cooper*, 2016 WL 866324, at *4 (E.D.N.C. Mar. 3, 2016). *Bell* provides that the necessary balancing analysis considers factors such as "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* And in this respect, Fourth Circuit courts have upheld prisoner strip searches when there is a reasonable belief that the prisoner might possess contraband, and the strip search is limited in scope. *See Leverette v. Bell*, 247 F.3d 160, 168 (4th Cir. 2001) ("[P]rison authorities generally may conduct a visual body cavity search when they possess a reasonable and individualized suspicion that an employee is hiding contraband on his or her person."); *see also Carter-el v. Boyer*, 2020 WL 939289, at *3 (E.D. Va. Feb. 25, 2020) (finding strip search reasonable under the Fourth Amendment where it was visual only, and occurred within privacy of inmate's cell). The Fourth Circuit's decision in *Cantlay v. West Virginia Jail & Corr. Fac. Auth.*, 771 F.3d 201 (4th Cir. 2014), is emblematic of this authority. There, the Fourth Circuit upheld the constitutionality of a strip search of an arriving inmate at a regional jail after his arrest where the search occurred in the shower room, was visual only, and was done by a single male officer. *See id.* at 205.

The strip search described in *Cantley* almost perfectly mimics what Plaintiff alleges here. The only difference is that here the search was motivated by a *greater* degree of individualized suspicion through the discovery of contraband in Plaintiff's cell, rather than a mere blanket policy to search new arrivals for contraband. Here, Plaintiff alleges that he was subject to a single strip

search, by male officers, in a secluded room. Am. Compl. at 6–7. According to Plaintiff, this was a visual search only. *See* Dkt. 7-3 at 3. Plaintiff does not allege that any other inmates, or any officers of the opposite sex, observed the search. Moreover, Plaintiff's Amended Complaint makes clear that the search was conducted because Officer Mears wanted to determine if Plaintiff was hiding contraband, specifically a broken piece of a hard plastic food tray lid, after a search of his cell revealed the broken tray lid. *Id.* at 6, 11; Dkt. 7-4 at 1; Dkt. 7-3 at 2.

As alleged, Officer Mears' strip search of Plaintiff was reasonable. As a general principle, "[p]rison officials have a legitimate penological safety interest in maintaining prison safety and preventing the introduction of contraband into a prison." *Farrell*, 2016 WL 866324, at *4. Here, Officer Mears' routine search of Plaintiff's cell revealed contraband and roused a reasonable suspicion that Plaintiff or his cellmate were hiding makeshift weapons. Moreover, there is no allegation that a member of the opposite sex observed Plaintiff's search, or that he was strip searched in front of anyone else. *See Hamer v. Jones*, 364 F. App'x 119, 124–25 (5th Cir. 2010) ("A strip search of a male prisoner by a female guard in the absence of exigent circumstances presents a colorable Fourth Amendment claim."); *Amaechi v. West*, 237 F.3d 356, 364 (4th Cir. 2001) ("[W]e have repeatedly emphasized the necessity of conducting a strip search in private."); *Coley v. Gallagher*, 2013 WL 210724, at *7 (D. Md. Jan. 17, 2013) ("Strip searches of convicted persons do not amount to a violation of privacy rights, as long as the genitals of the persons being searched are not involuntarily and unjustifiably exposed to members of the opposite sex.").

### ii. *The Alleged Right Was Not Clearly Established.*

Assuming arguendo that Plaintiff *has* established a Fourth Amendment violation based on the facts alleged in his pleadings and revealed in the materials attached to his Amended Complaint, the right at issue was not clearly established.

The inquiry into whether a particular right was "clearly established" is synonymous with the question of "notice." As such, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Saucier*, 533 U.S. at 202 (emphasis added). As one court in this district has put it: "[t]he Supreme Court has continually reinforced that what is to be considered established law should not be defined in an overly general manner, but rather 'the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Omeish v. Kincaid*, 2022 WL 2904876, at *2 (E.D. Va. July 22, 2022) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). The issue of whether a right was "clearly established" thus requires the reviewing court to "ask whether, when the defendant violated the right, there existed either controlling authority—such as a published opinion of [the Fourth Circuit]—or a 'robust consensus of persuasive authority' that would have given the defendants 'fair warning that their conduct was wrongful.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (internal quotations omitted).

Here, recent Fourth Circuit caselaw, and controlling Supreme Court precedent, make clear that Officer Mears would not have been on notice that his strip search of Plaintiff was unconstitutional (which it was not). The Fourth Circuit has held a series of strip searches of *arrestees* unconstitutional, based on their highly intrusive and public nature balanced against fairly weak security concerns. *See Amaechi*, 237 F.3d at 361 (holding that strip search of arrested woman conducted in street outside her home in view of street, where officer penetrated her genitalia with his bare hand, violated the Fourth Amendment); *Abshire v. Walls*, 830 F.2d 1277, 1279–80 (4th Cir. 1987) (finding strip search of male arrestee conducted with door open to other officers, including female officers, violated the Fourth Amendment). As the Fourth Circuit articulated in a

later case, those searches "were unconstitutional because there were no security reasons strong enough to justify the intrusive and public nature of the searches." *West v. Murphy*, 771 F.3d 209, 216 (4th Cir. 2014).

In contrast, as stated above, the Fourth Circuit has upheld the constitutionality of strip searches where they are conducted in private, and with some non-punitive justification. *See, e.g.*, *Cantley,* 771 F.3d at 205; *see also Calloway v. Lokey*, 948 F.3d 194, 203 (4th Cir. 2020) (holding that it was not a Fourth Amendment violation for prison officer to strip search a visitor, in a private setting, after developing a reasonable suspicion that she was concealing contraband during her visit). As such, Officer Mears would not have been on notice that he violated Plaintiff's constitutional rights when he conducted a visual strip search of Plaintiff, in a private room, after becoming aware of a potential safety threat.

**B.      Officer Mears' Use of Restraints While Searching Plaintiff's Cell.**

Next, Plaintiff alleges that Officer Mears violated the Eighth Amendment by handcuffing him outside of his cell for approximately 45 minutes, and then leaving him imprisoned in the shower room (without restraint) for an additional two hours. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quotation omitted). Eighth Amendment claims have both an objective, and subjective component. *Id.* Specifically, an analysis of whether there is a valid Eighth Amendment claim requires an inquiry into whether: (1) "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)"; and (2) "whether the prison official acted with a sufficiently culpable state of mind (subjective component)." *Id.*

For the objective component, "[a]n injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim as long as it rises above the

level of de minimus harm." *Id.* The objective component "is always satisfied '[w]hen prison officials maliciously and sadistically use force to cause harm.'" *Worley v. Ewing*, 2021 WL 951704, at *6 (S.D.W. Va. Mar. 12, 2021) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

For excessive force claims (as Plaintiff alleges here), the subjective component is evaluated with four factors: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

### i.     *Plaintiff Has Not Pled a Plausible Constitutional Violation.*

Plaintiff has failed to state an Eighth Amendment violation. Plaintiff first alleges that Officer Mears kept him in handcuffs in a locked room for 45 minutes while searching his cell, and then kept him in the locked room for another two hours before returning him to his cell. Dkt. 7 at 6. Plaintiff alleges that being kept in the handcuffs caused him "extreme pain" because of his "medical ailments," which he "verbally reminded" Officer Mears about. *Id.* He further alleges that he was unable to sit during this time,[11] which hurt his big toe, which was healing from a fracture that he allegedly received three months previously. *Id.*; *see* Dkt. 7-12.

Although perhaps Plaintiff could plausibly allege the objective component of the Eighth Amendment analysis, the non-conclusory factual allegations contained within his Amended Complaint do not plausibly allege the subjective component. At the outset, it is important to recall the prison environment in which this occurred—as Plaintiff himself alleges, there were significant reasons for why he was held in the shower room for this length of time, as Officer Mears had to

---

[11] Plaintiff does not explain why he was unable to sit in the shower room, but presumably it was due to the condition of the room, which he alleges was "soiled." Dkt. 7 at 10.

conduct a search of his cell, and then he needed to obtain authorization to place Plaintiff in alternative clothing.  Because Plaintiff could not simply stand by and watch the search, there was a reason for Officer Mears to apply force, and an adequate relationship between the amount of force used and that rationale.  Nor does Plaintiff allege that the handcuffs were too tight.  Instead, Plaintiff complains that he could not—or would not—sit for the almost three hours he was held in the room, which caused his big toe (fractured three months earlier) to hurt.  He also alleges the handcuff caused him shoulder pain (from a shoulder injury that was six months old).  There is thus no indication that keeping Plaintiff in the shower room, in handcuffs, for less than three hours, was wanton or malicious.

On the face of his Complaint, Plaintiff has not plausibly alleged an Eighth Amendment violation based on Officer Mears' conduct.  *See Alston v. Herring*, 2020 WL 6567142, at *3 (W.D.N.C. Nov. 9, 2020) (finding inmate failed to state plausible excessive force claim when he was "'muscled . . . against a nearby wall,' lifted off the ground, restrained, and carried to medical" after a "violent multi-inmate incident," suggesting that "the force was used to restore order" not "for the purpose of causing harm).

### ii.     *The Alleged Right Was Not Clearly Established.*

Even assuming Plaintiff plausibly stated an Eighth Amendment violation, which he has not, the right at issue was not clearly established at the time of the events giving rise to Plaintiff's claims.  In cases within the Fourth Circuit where the court found an Eighth Amendment violation (or determined that plaintiff sufficiently alleged such a violation) based on a prisoner's restraint, the conduct at issue is strikingly different than as alleged here.  And in those situations in which the constitutional analysis is largely based on an officer's reaction to events occurring around them—as with the Eighth Amendment's excessive force jurisprudence—it is important to recall

that this Court cannot view the circumstances with the benefit of hindsight; indeed, as the Fourth Circuit has held, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

For example, in many of those cases, the inmate was restrained for an extremely long period of time, often in humiliating or degrading conditions. *See Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002) (restraining inmate to a hitching post in the sun for seven hours violated was an "obvious" Eighth Amendment violation); *Williams v. Benjamin*, 77 F.3d 756, (4th Cir. 1996) (keeping inmate in four-point restraints, chained to his bed, for eight hours after being maced, without use of the toilet or any medical attention, was clear Eighth Amendment violation); *Randolph v. Potter*, 2017 WL 3158775, at *3 (D. Md. July 21, 2017) ("Randolph's allegation that he was placed in restraints, shackles, and handcuffs for nearly seven hours and then he passed out is sufficient to state a plausible claim of excessive force."); *Bount v. Miller*, 2015 WL 1505772, at *3 (W.D. Va. Mar. 31, 2015) (keeping inmate in chains too short to allow him to stand for eighteen hours precluded qualified immunity on Eighth Amendment claim). The collective time during which Plaintiff was restrained was far less than in these cases.

Alternatively, the inmate was subject to physical violence or abuse (outside of the reasonable bounds of maintaining inmate safety or discipline) while restrained. *See Worley v. Ewing*, 2021 WL 951704, at *7 (S.D.W. Va. Mar. 12, 2021) (finding no qualified immunity for officers who slammed restrained inmate into the ground because "it was clearly established that an officer may not use unnecessary physical force against a restrained inmate who is compliant and not resisting"); *Steepleton v. Green*, 2020 WL 402236, at *2 (W.D.N.C. Jan. 23, 2020) ("Plaintiff's allegations that Officer Green slammed him into the wall then onto the floor and hit

his face while Plaintiff was handcuffed and did nothing to warrant the use of force are sufficient to state a claim of excessive force.").

The circumstances that Officer Mears confronted here was far different, as was his reaction to the same—Plaintiff here simply asserts his right to be free from mildly restrictive handcuffs or restraints within prison for relatively short periods of time (two to three hours). *See, e.g.*, *Pennington v. Mercer Cnty. Comm.*, 2023 WL 3607267, at \*10–11 (S.D.W. Va. May 23, 2023) (noting it "ha[d] not located nor have the parties pointed to a single case that would have put [the officer] on notice that his refusal to loosen [plaintiff's] handcuff would violate her constitutional right"). There is no body of authoritative case law asserting such a right, given the circumstances Plaintiff alleges. Simply put, there is no clear authority that would have put Officer Mears on notice that leaving Plaintiff in light restraints, justified by concerns for inmate and/or officer safety, for a limited period, would violate his constitutional rights. Accordingly, Officer Mears is entitled to qualified immunity on this claim.

### C. Required Use of Alternative Clothing.

Finally, Plaintiff alleges he was forced to wear clothing that exposed his body and genitalia to other inmates and staff (including a single female officer) for three days. In the Fourth Circuit, "an inmate's right to bodily privacy in prison encompasses the involuntary exposure of his genitals in the presence of the opposite sex." *Wilkins v. Upton*, 639 F. App'x 941, 944 (4th Cir. 2016). However, "[m]any courts which have considered the question have held that a male inmate's constitutional rights *are not* violated when a female guard is permitted to view his genitals on a limited basis." *Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 565 (W.D. Va. Aug. 22, 2000) (emphasis added) (collecting cases).

Where courts in the Fourth Circuit do find a constitutional right to bodily privacy, it is

almost uniformly in the context of regular and routine exposure of inmate's fully naked bodies to female guards. *See Ashann-Ra*, 112 F. Supp. 2d at 565 ("[R]outinely or regularly exposing an unclothed inmate to female guards may constitute a constitutional violation."); *cf. Thomas v. Shields*, 981 F.2d 1252 (4th Cir. 1992) (holding that an inmate's Fourth Amendment "right to privacy was not violated by the occasional, inadvertent encounter with female guards"); *Farrell*, 2016 WL 866324, at *6 (finding strip search constitutional where a female officer was present in the room where it was conducted).

Beyond the "limited privacy right" of the Fourth Amendment, the Eighth Amendment "stands as the primary constitutional limitation associated with an inmate's bodily integrity." *Wilkins*, 639 F. App'x at 944–45. The seminal Fourth Circuit case on this issue is *Lee v. Downs*, where the Court held that male prison guards violated a female inmates' Eighth Amendment right to be free from cruel and unusual punishment by physically restraining her while a female nurse forcibly removed the inmate's underclothing—after the inmate had volunteered to remove her clothes herself if the male guards would leave. 641 F.2d 1117, 1119–20 (4th Cir. 1981). An Eighth Amendment claim can also rise from "allegations of sexual abuse." *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016).

### i. *Plaintiff Has Not Pled a Plausible Constitutional Violation.*

As alleged, Plaintiff has not established a constitutional violation. Plaintiff alleges only that a single female staff member saw him while he was in alternative clothing. This is insufficient to state a claim for a Fourth Amendment violation of Plaintiff's right to privacy. *See Hickman v. Jackson*, 2005 WL 1862425, at *10 (E.D. Va. Aug. 3, 2005) (recommending grant of summary judgment after finding male inmate's right to privacy was not violated because he was only "seen naked by female guards acting in the course of their professional duties a total of seven or eight

times over the course of four days") *aff'd* 190 F. App'x 241 (4th Cir. 2006).

Plaintiff's allegations are also insufficient to establish an Eighth Amendment violation—whether as an invasion of Plaintiff's right to privacy or to be free of sexual abuse. In *Jackson v. Holley*, the Fourth Circuit held that the defendant prison official did not commit a constitutional violation where she sent a "sexually explicit and lurid" letter to male prisoner, "whispered sexually explicit words to [him]" and put her groin in front of the prisoner's face while he was seated for a haircut. 666 F. App'x at 244. Plaintiff alleges no such sexually explicit words or conduct were directed at him here, only that one female office saw him while he was wearing allegedly see-through clothing. As such, his allegations do not plausibly state any constitutional violation.

### ii.     *The Alleged Right Was Not Clearly Established.*

But even if Plaintiff has established a constitutional claim, which he has not, there is no governing, or even persuasive, authority sufficient to have put Officer Mears on notice that he was violating Plaintiff's rights when he ordered him to wear alternative clothing. There are no applicable Supreme Court or Fourth Circuit cases on the constitutionality of requiring a prisoner to wear so-called "alternative clothing" that exposes an inmate's genitalia. Nor is there a "robust consensus of persuasive authority" in other Circuits. *Turner*, 930 F.3d at 644.

The only case directly concerning the use of alternative prison clothing is from the Seventh Circuit. In *King v. McCarty*, the Seventh Circuit held that requiring a convicted prisoner to wear a translucent jumpsuit (without underwear) during an hour-long transfer, and in view of a female officer, constituted an Eighth Amendment violation, but not a Fourth Amendment violation. 781 F.3d 889, 893 (7th Cir. 2015). Four years later, the Seventh Circuit overruled its holding in *King* on the issue of an inmate's right to privacy under the Fourth Amendment, holding that "the Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual

inspections, subject to reasonable intrusions that the realities of incarceration often demand. *Henry v. Hulett*, 969 F.3d 769, 779, 782–83 (7th Cir. 2020).

At the outset, a single case (in a different circuit) is insufficient to create the robust consensus of persuasive authority necessary to render Plaintiff's alleged constitutional right "clearly established." Nor would *King* have provided notice to Officer Mears his alleged conduct was unconstitutional *in the situation he confronted*. Unlike here, in *King*, the prisoner was traveling outside of the prison walls during a transfer when wearing translucent clothing—a much more public facing event. As alleged here, Plaintiff was within the prison at all times during the three-day period. Accordingly, to the extent Plaintiff *has* alleged an Eighth Amendment violation based on alternative clothing, the right was not clearly established at the time. Officer Mears is therefore entitled to qualified immunity on Plaintiff's claim.

## CONCLUSION

For the foregoing reasons, Defendant Damien Mears respectfully requests that the Court grant his motion to dismiss all of Plaintiff's claims against him, with prejudice.

Dated: June 25, 2024

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
CAROLYN M. WESNOUSKY
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3996
Email: Carolyn.Wesnousky@usdoj.gov

*Counsel for Defendant Damien Mears*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on June 25, 2024, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, and caused a copy to be served by first-class mail on the

following *pro se* plaintiff:

Alex Calderon-Velasquez
81838-083
FCI Elkton
Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 10
Lisbon, OH 44432

                              /s/
                            CAROLYN M. WESNOUSKY
                            Assistant United States Attorney
                            Office of the United States Attorney
                            2100 Jamieson Avenue
                            Alexandria, Virginia 22314
                            Telephone: (703) 299-3996
                            Email: Carolyn.Wesnousky@usdoj.gov

                            *Counsel for Defendant Damien Mears*