IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Alex Calderon-Velasquez,<br> *Plaintiff,* | )<br>)<br>) |
| v. | )   No. 1:22-cv-692 (AJT/IDD) |
| | ) |
| D. Mears, et al.,<br> *Defendants.* | )<br>) |

### ORDER

Before the Court is Defendant Damien Mears's Motion to Dismiss, [Doc. No. 37] (the "Motion"), the memoranda in support thereof, [Doc. Nos. 38, 43], and in opposition thereto, [Doc. No. 40].[1] For the reasons that follow, the Motion is **GRANTED** as to the Eighth Amendment excessive force claim (Count I), Eighth Amendment sexual abuse claims (Count II), and Fourth Amendment strip search claim (Count III, in part) and is **DENIED** as to Plaintiff's Fourth Amendment bodily privacy claim based on the alleged wearing of see-through paper clothes without underwear for three days.

### I.   BACKGROUND

Plaintiff brings this civil action under 42 U.S.C. §§ 1983, 1985, 1986, 1988 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He alleges violations of his Fourth and Eighth Amendment rights by Defendant Damien Mears, a Correctional Officer, and Defendant Dr. Jessica Tate, a psychologist, each of whom is a Bureau of Prison ("BOP") employee (collectively, "Defendants"). Plaintiff alleges the violations occurred while he was detained at the Special Housing Unit ("SHU") of the Federal Correctional Institution in

---

[1]   Plaintiff Alex E. Calderon-Velasquez, proceeding *pro se*, was notified of and afforded the opportunity to respond pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). [Doc. No. 37-1].

1

Petersburg, Virginia ("FCI Petersburg") on various dates in 2022. *See generally* [Doc. No. 7]. The allegations in the First Amended Complaint are as follows.

On January 6, 2022, at approximately 6:00 p.m., Officer Mears and Officer Hall[2] locked Plaintiff and his cellmate in a shower room, while handcuffed, as the officers searched their cell for approximately 45 minutes. *Id.* at 5–6. During that time, the handcuffs caused "wanton physical pain to [Plaintiff's] shoulder." *Id.* at 6. Once the search concluded, the officers removed Plaintiff's handcuffs and informed Plaintiff that they had discovered a clothing line (allegedly used by inmates to hang a sheet for privacy), *id.*, a fishing line (allegedly used by inmates to pass items between cells), *id.*, and "a broken piece of [a] tray cover wrapped inside of a [sic] empty fish packet," [Doc. No. 7-4] at 1. The latter concerned the BOP officers, presumably because it could be used as a weapon, therefore, Mears prevented Plaintiff from returning to his cell and left him in the shower room, uncuffed, for an additional two hours. [Doc. No. 7] at 6. Given that the shower room was "soiled with feces, urine, and blood," Plaintiff remained standing for the approximately three hours he spent in that room, resulting in "extreme pain stemming from [his] still healing broken toe." *Id.* Plaintiff alleges that he repeatedly informed Mears that he had a medical need to be moved to a location where he could sit. *Id.*

When Mears returned to the shower room, at approximately 8:45 p.m., he informed Plaintiff that SHU Lt. De Los Santos had approved Mears's request to place Plaintiff in "alternate clothing" or "paper clothes" that are see-through and make it nearly impossible to hide any contraband on one's body. *Id.* Mears and Hall then separated Plaintiff from his cellmate and strip-searched Plaintiff in the shower room. *Id.* at 7. Plaintiff alleges that Mears was searching for an "8 by 10 inch hard plastic [tray] lid" that could not fit inside his body. [Doc. No. 7-3] at 3.

---

[2]   J. Hall is not a defendant in this case.

Following the strip search, Mears confiscated Plaintiff's regular prison clothing and required him to don the paper clothes, which Plaintiff alleges was only done to punish and antagonize him. [Doc. No. 7] at 7. Mears then denied Plaintiff's request for underwear, making Plaintiff's body and genitals visible to "dozens" of inmates and staff when Mears escorted Plaintiff from the shower room back to his cell. *Id.* Plaintiff alleges that he remained in the translucent paper clothes from January 6, 2022, to January 8, 2022, during which time he was escorted to several places in front of other inmates and staff, including female officers. *Id.* at 7–8, 11–12. On January 8, 2022, after Plaintiff told another senior staff member about the situation, Plaintiff was given underwear and allowed to change into regular clothing. *Id.* at 8.

On June 17, 2022, Plaintiff filed this case against Defendants, in their official and individual capacities, then amended his complaint to bring the following *Bivens* claims against Mears: use of excessive force when handcuffing and locking Plaintiff in the dilapidated shower room, in violation of the Eighth Amendment, *Id.* at 9–10, (Count I); sexual abuse and harassment when strip searching and exposing Plaintiff's naked body through the use of paper clothes, in violation of the Eighth Amendment, *id.* at 10–11, (Count II); and bodily privacy intrusion related to the strip search and use paper clothes, in violation of the Fourth Amendment, *id.* at 11–12 (Count III). On March 26, 2024, the Court dismissed the allegations against the Defendants in their official capacity, [Doc. No. 33], and Mears has since moved to dismiss all claims brought against him in his individual capacity, [Doc. No. 37]. Service was perfected on Dr. Tate on January 29, 2025 and she filed a motion to dismiss on March 31, 2025, with Plaintiff's response due in mid-April.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

3

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This does not require detailed allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Pro se complaints are held to less stringent standards than those drafted by attorneys." *Martin v. Cox*, 36 F.3d 1093 (4th Cir. 1994). When a defendant moves to dismiss civil rights claims, the Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Hall v. Burney*, 454 F. App'x 149, 150 (4th Cir. 2011).

### III. DISCUSSION

Mears argues that he should be dismissed from this action because: (A) Plaintiff has not stated a claim for excessive force under the Eighth Amendment (Count I); (B) Plaintiff has not stated a claim for a bodily privacy violation under the Fourth Amendment (Count III); (C) Plaintiff has not stated a claim for sexual abuse or harassment under the Eighth Amendment (Count II); and (D) even if Plaintiff had stated a claim, Mears is shielded by qualified immunity.[3] Each argument is considered in turn.

A. <u>Plaintiff fails to state an excessive force claim under the Eighth Amendment (Count I)</u>

To state an excessive force claim under the Eighth Amendment, a plaintiff must allege: (1) "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)"; and (2) "the prison official acted with a sufficiently culpable state of mind

---

[3] Defendant Mears also contends that Plaintiff's *Bivens* claims are not cognizable because *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) stands for the proposition that a case must have nearly identical facts to those in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980), to state a *Bivens* claim. *See* [Doc. No. 38] at 7–16. But the Fourth Circuit has recognized *Bivens* claims in a broader set of scenarios, including bodily privacy claims within the prison setting. *See e.g., Johnson v. Robinette*, 105 F.4th 99, 114 (4th Cir. 2024); *Wilkins v. Upton*, 639 F. App'x 941, 944–45 (4th Cir. 2016); *Lee v. Downs*, 641 F.2d 1117, 1119–20 (4th Cir. 1981).

(subjective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). For the objective component, "[a]n injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim as long as it rises above the level of *de minimus* harm." *Id.* The subjective component of an excessive force claim has four prongs: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" *Worley v. Ewing*, 2021 WL 951704, at *6 (S.D.W. Va. Mar. 12, 2021) (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). In short, the subjective component "requires a showing that the defendant prison official acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Id.*

Here, Plaintiff's injuries were a hurt shoulder and "extreme pain stemming from [his] still healing broken toe," and the force was attributable to Mears' handcuffing and placing Plaintiff in a shower room that was "soiled with feces, urine, and blood," which prevented Plaintiff from sitting and maintained pressure on his broken toe. [Doc. No. 7] at 6. Because Defendant Mears concedes that "Plaintiff could plausibly allege the objective component" of excessive force, the focus of the inquiry is on the subjective component, with Mears arguing there is "no indication that keeping Plaintiff in the shower room, in handcuffs, for less than three hours, was wanton or malicious" and that Mears undertook such conduct in good faith to maintain order while he searched Plaintiff's cell and obtained authorization to place Plaintiff in alternative clothing. [Doc. No. 38] at 22–23. In response, Plaintiff highlights that Mears "was, as he should have been, fully aware of [Plaintiff's] then-current medical conditions," including his broken toe, and Plaintiff "verbally reminded" Mears of his "medical conditions and physical pain" while standing

5

handcuffed in the shower room, nevertheless, "Mears ignored [his] pain and left." [Doc. No. 7] at 5–6.

With respect to the use of handcuffs, Plaintiff alleges "Mears peacefully cuffed [his] hands behind [his] back," Mears was acting to maintain order while searching Plaintiff's cell, Plaintiff was in handcuffs for less than an hour, and the only allegation that Plaintiff was injured is the conclusory statement that the handcuffs caused "wanton physical pain to [his] shoulder," therefore, the use of handcuffs in this context does not plausibly rise to the level of excessive force. [Doc. No. 7] at 6, 10. Likewise, the act of leaving Plaintiff in the decrepit shower room to stand for three hours does not plausibly allege the application of an excessive or severe amount of force. Rather, it is non-action on Mears's part that does not rise to the level of an Eighth Amendment violation. In sum, even when all the factual allegations are viewed in the light most favorable to Plaintiff, he has not stated facts that make plausible his claim of excessive force. Accordingly, the Motion as to Count I is granted.

    B. <u>Calderon-Velasquez states a claim for invasion of bodily privacy under the Fourth Amendment (Count III)</u>

Plaintiff claims his Fourth Amendment rights were violated in two respects, when Mears strip searched him and when Mears obligated him to wear translucent clothing that made his naked body visible to dozens of inmates and staff. [Doc. No. 7] at 11–12.

First, to determine whether there was a constitutionally reasonable strip search, a court "examines the search in its complete context and considers the following factors: (1) the scope of the particular intrusion; (2) the manner in which the search was conducted; (3) the justification for initiating the search; and (4) the place in which the search was performed." *Johnson v. Robinette*, 105 F.4th 99, 114 (4th Cir. 2024) (quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979)).

Plaintiff's allegations center on the third prong, stating that Mears had no "penological reason to [strip search him] as he was looking for a 'tray lid' that measured 8 by 11 inches and could not realisticly [sic] fit inside [Plaintiff's] anus, penis, or any other body cavity." [Doc. No. 7] at 10. Defendant Mears counters that the incident report demonstrates he was searching for fragments of a tray lid, not an entire tray lid, because what Mears discovered in Plaintiff's cell was "a broken piece of the tray cover." [Doc. No. 7-4] (Incident Report). As for the scope, manner, and place of the search, Plaintiff alleges that he was searched in the shower room with only Mears, Hall, and Plaintiff being present, and the search was visual, with no indication that the officers touched or penetrated Plaintiff. *See* [Doc. No. 7-3] at 1–3.

Even after viewing these allegations in the light most favorable to Plaintiff, he has actually alleged that Mears had some degree of individualized suspicion to conduct a strip search based on finding the tray lid fragment in Plaintiff's cell, the search was only visual, and the sole observers were officers Mears and Hall. Such a search is constitutionally reasonable. *See Cantley v. West Virginia Jail & Corr. Fac. Auth.*, 771 F.3d 201 (4th Cir. 2014) (finding a visual strip search may be conducted for every detainee admitted to the general population of a jail, based on blanket suspicion); *see also Sims v. Labowitz*, 885 F.3d 254, 263 (4th Cir. 2018) (discussing unconstitutional searches that involved a more public display of nakedness, unwarranted penetration, or verbal commands that Plaintiff perform some sexual act). For these reasons, the Motion is granted with respect to Plaintiff's Fourth Amendment claim related to the strip search conducted on June 6, 2022.

Separately, Plaintiff raises a Fourth Amendment claim that Mears maliciously exposed Plaintiff's genitals to dozens of prying eyes for three days. The seminal Fourth Circuit case on this issue is *Lee v. Downs*, which observed that "[m]ost people, however, have a special sense of

privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating." [4] 641 F.2d 1117, 1119–20 (4th Cir. 1981). To assess whether the exposure of an inmate's genitals was "reasonably necessary," courts consider various factors, including, the penological interest, frequency and duration of the alleged exposure, the manner of exposure, and whether a member of the opposite sex viewed the plaintiff while exposed. *See Lee*, 641 F.2d at 1118–21; *Thomas v. Shields*, 981 F.2d 1252, 1252 (4th Cir. 1992) (holding an inmate's Fourth Amendment "right to privacy was not violated by the occasional, inadvertent encounter with female guards"); *X v. Bratten*, No. 91-6335, 1994 WL 410888, at *3 (4th Cir. Aug. 8, 1994) (finding a genuine issue of material fact as to the constitutionality of a search where inmate alleged female guards regularly observed him in the shower); *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 565–66 (W.D. Va. 2000) (finding plaintiff stated a constitutional claim of invasion of privacy based on allegations that female officers saw him showering for months when no there were no shower curtains). Put simply, an inmate's right to bodily privacy is inversely proportional to the threat he poses to guards and other inmates.

Defendant Mears contends that "[p]rison officials have a legitimate penological safety interest in maintaining prison safety and preventing the introduction of contraband into a prison" and, to that end, he used the paper clothes to confirm that Plaintiff had no further contraband hidden in his cell or on his body. *Farrell v. Cooper*, 2016 WL 866324, at *4 (E.D.N.C. Mar. 3, 2016); *see also* [Doc. No. 38]. Notwithstanding that interest, Plaintiff alleges that the duration, frequency,

---

[4] The court in *Lee v. Downs* did not specify the "exact source of this constitutional right" to not have an inmate's genitals involuntarily exposed in the presence of people of the other sex when not reasonably necessary. *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1142 (4th Cir. 1982). However, the Fourth Circuit recently found that right stems from the Fourth Amendment. *See Wilkins v. Upton*, 639 F. App'x 941, 944–45 (4th Cir. 2016). The Eighth Amendment may also be triggered in involuntary exposure cases when there is the additional element of "intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate." *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024); *see also Wilkins*, 639 F. App'x at 944–45.

8

and manner of his exposure were not reasonable where: (i) he was in paper clothes for three days rather than some number of hours, (ii) female BOP officers saw his genitals, (iii) Mears's own colleagues expressed concern for Plaintiff's situation, (iv) Mears appears to have acted contrary to internal BOP policy, and (v) rather than mitigate the exposure by maintaining Plaintiff in his cell and in underwear, Mears escorted Plaintiff through the prison on, at least, three occasions without underwear. [Doc. No. 7] at 7–8.

As to Plaintiff's second contention, there is not necessarily a constitutional violation "when a female guard is permitted to view [an inmate's] genitals on a limited basis," *Ashann-Ra*, 112 F. Supp. at 565. At best, Plaintiff has stated in his First Amended Complaint that multiple female staff members saw his genitals at least three times over three days,[5] and his belongings had been removed from his cell, depriving him of an item he could use to "protect the sensitive areas of his anatomy from sight." *Hickman v. Jackson*, No. 2:03CV363, 2005 WL 1862425, at *9 (E.D. Va. Aug. 3, 2005) (finding no constitutional violation where female guards saw inmate naked "seven or eight times over the course of four days" where inmate could cover himself and did not complain he lacked clothing). Nevertheless, these allegations need to be considered together with other aspects pertaining to his wearing the paper clothes. The other factors he raises all weigh in his favor. For instance, the parties agree the applicable BOP policy provides for the use of paper clothes "when an inmate alters, destroys, or uses a clothing/linen issued article in a manner that poses a threat to safety, security, or good order of the SHU or to herself/himself, other inmates, or staff" and "the Warden, Health Services Administrator, and a psychologist" sign off. [Doc. No. 7-7] at 3. Based on the facts in the First Amended Complaint, neither prerequisite was met, and

---

[5] Plaintiff alleges that Mears exposed Plaintiff's genitals to "OPPOSITE SEX STAFF," [Doc. No. 7] at 8, "staff including female officers," *id.* at 11, "dozens of people including female officers," *id.* at 12.

prison personnel not following their own policies raises a reasonable inference as to the impropriety of the search. Relatedly, Mears's own colleagues are alleged to have "expressed their disgust for Mears' decision to keep [Plaintiff] naked in paper clothes without underwear," "told Mears that it was illegal for Mears to keep [Plaintiff] naked without underwear beneath see-through clothes and that Mears had to provide [Plaintiff] with underwear," and when Plaintiff was able to get the attention of a supervising officer on the third day, June 8, 2022, that officer arranged to return Plaintiff's underwear and regular prison clothes. [Doc. No. 7] at 7–8. *See King v. Rubenstein*, 825 F.3d 206, 216 (4th Cir. 2016) ("'deference' that is afforded to prison administrators 'does not insulate from review actions taken in bad faith and for no legitimate purpose'") (quoting *Williams v. Benjamin*, 77 F.3d 756, 765 (4th Cir. 1996)).

In conclusion, accepting all of Plaintiff's allegations as true, as the Court must do at this stage, *Iqbal*, 556 U.S. at 678, Plaintiff has alleged facts that make plausible that his Fourth Amendment rights to bodily privacy were violated when Mears obligated Plaintiff to wear paper clothes for three days, without underwear, in his cell and through prison hallways, in view of female staff members. For these reasons, the Court will deny the Motion as to this claim under Count III.

  C. <u>Plaintiff fails to state a claim of sexual abuse under the Eighth Amendment (Count II)</u>

Plaintiff brings two Eighth Amendment claims for sexual harassment and sexual abuse related to the strip search at issue and the use of translucent paper clothes. Those claims fail at the threshold level because Plaintiff has failed to allege "intentional contact with [his] genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) (discussing when an inmate who is

10

involuntarily exposed to the opposite sex may also have an Eighth Amendment claim); *see also Wilkins*, 639 F. App'x at 944–45. As discussed, Plaintiff has alleged the strip search was conducted visually, without any touching. For the reasons previously stated, any constitutional violation related to such exposure is properly addressed under the Fourth Amendment.

    D. <u>Defendant Mears is not entitled to qualified immunity</u>

A defendant sued under 42 U.S.C. § 1983 may assert an affirmative defense of qualified immunity. Qualified immunity operates to shield officers from liability for discretionary conduct with ambiguous constitutional implications and applies to Section 1983 claims unless (1) a constitutional right was in fact violated on the facts alleged, and (2) "the unconstitutionality of the conduct was clearly established" when the conduct occurred. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). The "clearly established" standard requires it be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012)). The Fourth Circuit splits the burden of proof for the qualified immunity defense between the plaintiff and the defendant, such that "[t]he plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022).

At this juncture, Defendant Mears has not established his entitlement to qualified immunity because Plaintiff has alleged that Mears gratuitously exposed Plaintiff's naked body, including his genitals, to dozens of inmates and female staff over three days, which has long been "clearly established" to be a violation of constitutional rights in this circuit. *See Jones v. Price*, 696 F. Supp. 2d 618, 626 (N.D.W. Va. 2010) (finding qualified immunity did not shield the official because "the constitutional right to keep [plaintiff's] genitals private from unreasonable exposure to members of the opposite sex" had been clearly established in *Lee v. Downs*). Further, allegations

11

of an intentional infliction of punishment, for no penological purpose, with a subjective intent to harm, cannot be protected by qualified immunity. *See, e.g.*, *Thorpe v. Clarke*, 37 F.4th 926, 930 (4th Cir. 2022). Here, Plaintiff alleges facts that make plausible that Mears had a subjective intent to harm him, including that Mears refused to provide Plaintiff with underwear—for reasons unknown and unexplained in Mears's filings—and that Mears repeatedly escorted Plaintiff through the prison, in view of others, while Plaintiff donned the translucent paper clothes. As such, the Court finds that Mears is not entitled at this point to qualified immunity on these claims.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff has stated a Fourth Amendment claim based on Mears allegedly forcing Plaintiff to wear see-through paper clothes for three days, without underwear, thereby, exposing Plaintiff's genitals to inmates and female staff members, well after the search of Plaintiff's cell had concluded. Plaintiff has otherwise failed to state a claim for excessive force under the Eighth Amendment, sexual harassment or sexual abuse under the Eighth Amendment, and an unconstitutional search under the Fourth Amendment. Accordingly, it is hereby

**ORDERED** that the Motion, [Doc. No. 37] is **GRANTED** as to the Eighth Amendment excessive force claim (Count I), Eighth Amendment sexual abuse claims (Count II), and Fourth Amendment strip search claim (Count III, in part) and is otherwise **DENIED**.

The Clerk is directed to forward a copy of this Order to all counsel of record and *pro se* Plaintiff.

Alexandria, Virginia
March 31, 2025

/s/
Anthony J. Trenga
Senior United States District Judge